**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD PAPACODA, <u>et al.</u>** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 05-CV-3003** |
| | : | |
| **THE A.I. DUPONT HOSPITAL FOR** | : | |
| **CHILDREN OF THE NEMOURS** | : | |
| **FOUNDATION, <u>et al.</u>** | : | |

<u>**MEMORANDUM  AND ORDER**</u>

**Kauffman, J.**                                                    **June    26,  2006**


        In this action, Plaintiffs Edward and Sarah Papacoda ("Plaintiffs") bring claims both as

Administrators of the Estate of their deceased daughter, Kaitlyn Papacoda ("Kaitlyn"), and in

their own right, alleging fraud, conspiracy and fraudulent concealment against The A.I. Dupont

Hospital for Children of the Nemours Foundation ("Dupont Hospital"), The Nemours

Foundation, William I. Norwood, M.D. ("Dr. Norwood"), Christian Pizarro, M.D. ("Dr.

Pizarro"), John Murphy, M.D. ("Dr. Murphy"), Ellen Spurrier, M.D. ("Dr. Spurrier"), Deborah

Davis, M.D. ("Dr. Davis"), and Russell Raphaely, M.D. ("Dr. Raphaely") (Count 1); wrongful

death, negligent supervision, monitoring and retention of health care providers against Dupont

Hospital and The Nemours Foundation (Count II and VIII); negligence and wrongful death

against Dr. Norwood and Dr. Pizarro (Count III and IX); negligent infliction of emotional

distress against Dr. Norwood, Dr. Pizarro, Dr. Murphy, Dr. Davis, Dr. Raphaely and Dr. Spurrier

(Count IV); negligence and wrongful death against Daniel Duncan, M.D. ("Dr. Duncan") and

Paul Kerins (Count V and X); informed consent against Dr. Norwood, Dr. Pizarro, Dr. Murphy,

Dr. Davis, Dr. Raphaely and Dr. Spurrier (Count VI); and violations of the Rehabilitation Act, 29

U.S.C. § 701, et seq. against Dupont Hospital, The Nemours Foundation, Dr. Norwood, Dr.

Pizarro, Dr. Murphy, Dr. Davis, Dr. Raphaely and Dr. Spurrier (Count VII).  The Complaint

seeks compensatory, consequential and punitive damages, attorney's fees and costs.   Currently

before the Court are Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and to Strike

pursuant to Fed. R. Civ. P. 12(f).[1]  For the reasons stated below, the Motion to Dismiss will be

granted in part and denied in part and the Motion to Strike will be denied.[2]

## I. BACKGROUND

Taking Plaintiffs allegations as true, the relevant facts are as follows.  Plaintiffs are the

parents of Kaitlyn Papacoda who was born with a serious heart condition and passed away on

August 12, 2003, following two surgeries that were performed at the Dupont Hospital.

Plaintiffs' Complaint ("Complaint") ¶ 2.  Mrs. Papacoda, a Connecticut resident, delivered

Kaitlyn in Delaware in order to have her treated by Dr. Norwood at the Dupont Hospital.  Id. ¶

14.  Dr. Norwood was to be the primary surgeon for Kaitlyn's procedure which was to require

three separate surgeries.  Id. ¶¶ 6, 23.

The first surgery was performed on February 26, 2003, two weeks after Kaitlyn was

born.[3]  The second surgery, a hemi-fontan procedure, was performed on June 26, 2003.  Id. ¶ 21.

---

[1]     Moving Defendants are Dr. Norwood, Dr. Pizarro, Dr. Murphy, Dr. Davis, Dr. Raphaely, Dr. Spurrier, Dr. Duncan and Paul Kerins.

[2]     Moving Defendants also move to dismiss the entire Complaint pursuant to Fed. R. Civ. P. 10(b) or for a more definite statement pursuant to Fed. R. Civ. P. 12(e).  The Court finds that the remaining claims are sufficiently pled to allow Moving Defendants to frame a responsive pleading.  Accordingly, this Motion will be denied.

[3]     As Moving Defendants note in their Motion to Dismiss, the Complaint states that Kaitlyn was born on March 12, 2003.  However, her first surgery was performed on February 26, 2003.  The Court will assume that the allegation of her birthdate is a typographical error and that

At the time both surgeries were performed, Drs. Murphy and Norwood were studying to determine whether the third surgery could be performed in a "cath lab." Id. ¶ 25.  In order to test this hypothesis, the second surgery was modified.  Id.  While Mrs. Papacoda was told that the third surgery would be performed in a "cath lab" and that modifications would be made to the second surgery to make this possible, Plaintiffs were never told that the second surgery was materially different from the standard procedure or that it was  "experimental."  Id. ¶¶ 24, 53.  In addition, Plaintiffs allege that inadequate and harmful cooling and cardiopulmonary procedures were employed during both the first and second surgeries and that there was a conspiracy among Moving Defendants to conceal this from Plaintiffs.  Id. ¶¶ 51, 52.  Plaintiffs allege that, as a result of this deficient and "experimental" care, Kaitlyn passed away on August 12, 2003.  Id. ¶ 129.

Moving Defendants bring this 12(b)6 Motion to Dismiss Counts I, IV, VI, and VII of the Complaint as well the claim for punitive damages.  In their Motion to Strike, Moving Defendants argue that certain references to Drs. Norwood and Murphy are scandalous and impertinent and should be stricken from the Complaint.

## II.  LEGAL STANDARD

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule

---

Kaitlyn was born on February 12, 2003.

12(b)(6) motion will be granted only when it is certain that no relief could be granted under any

set of facts provable by plaintiff.  See Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

## III. CHOICE OF LAW

With respect to fraud, conspiracy and punitive damages, the laws of Pennsylvania and

Delaware do not differ.  Where the laws of potentially interested jurisdictions are in agreement,

the choice of law question need not be decided and the Court may refer to either the forum law or

the laws of the interested jurisdictions.  Lucker Mfg. v. Home Ins. Co., 23 F.3d 808 (3d Cir.

1994).

However, with respect to negligent infliction of emotional distress and informed consent,

Pennsylvania and Delaware law differ.  In a tort case, if the states' laws differ, Pennsylvania

courts conduct an "analysis of the policies and interests underlying the particular issue before the

court."  Griffith v. United Air Lines, Inc., 416 Pa. 1, 21 ( 1964).[4]   As Kaitlyn was not a

Pennsylvania resident nor was she ever treated in Pennsylvania and all of the relevant conduct

occurred in Delaware, Delaware law will apply to these two claims.[5]

## IV.  DISCUSSION

### A. Count I - Fraud, Fraudulent Concealment and Conspiracy[6]

---

[4]    In a diversity action, a district court shall apply the choice of law rules of the
forum state in determining which state's law will apply to the substantive issues before it.
Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988).

[5]    Plaintiffs and Moving Defendants agree that Delaware law applies to these claims.

[6]    Fraudulent concealment is not a cause of action but rather a doctrine invoked
when seeking equitable tolling.  See Gee v. CBS, Inc., 471 F. Supp 600, 622-23 (E.D.Pa 1979).
Accordingly, it will be dismissed as a separate claim from the Complaint.  However, Plaintiffs
may raise the doctrine of fraudulent concealment at a later stage if there is a challenge to the

1. *Fraud*

Plaintiffs allege that all defendants except Paul Kerins committed fraud when: (1) they falsified records and concealed evidence pertaining to both of Kaitlyn's surgeries, specifically with regard to cooling temperatures, blood-gas readings and the duration of circulatory arrest; (2) they misled Plaintiffs about the reason for Kaitlyn's deteriorating condition following her second surgery; (3) they misled Plaintiffs about the "experimental nature" of the second surgery; (4) they held themselves out as the best cardiac surgery center for treating their daughter's illness; and, (5) they failed to tell Plaintiffs that their negligence caused Kaitlyn's death.

To state a claim for fraudulent misrepresentation, a plaintiff must show: (1) a representation; (2) material to the transactions; (3) made falsely, with knowledge of its falsity or recklessness as to its falsity; (4) with the intent of misleading another to rely on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance. Bortz v. Noon, 556 Pa. 489 (1999). Additionally, facts that are intentionally concealed in order to deceive a party may give rise to a claim of fraud. DeJoseph v.Zambelli, 392 Pa. 24, (1958).

Taking all of Plaintiffs allegations as true, the Complaint does state facts that could give rise to a claim of fraud. Plaintiffs have pled sufficient facts to clear the low hurdle used when considering 12(b)(6) motions to dismiss, particularly with regard to the effort to conceal the fact that the second surgery was "experimental." However, Rule 9(b) supplements the standard pleading requirements in cases alleging fraud and requires a plaintiff to go beyond the minimal requirements of Fed. R. Civ. P. 8(a).

Fed. R. Civ. P. 9(b) states:

---

timeliness of their claims.

5

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Plaintiffs must plead the date, place or time of the fraud, or otherwise inject precision and some measure of substantiation into their allegations of fraud.  Lum v. Bank of America, 361 F.3d 217, 223-34 (3d Cir. 2004).  Furthermore, when multiple defendants are involved, the complaint must specify the allegations of fraud applying to each defendant.  MDNet, Inc. V. Pharmacia Corp., 2005 WL 1385906, at *5 (3d Cir. June 13, 2003)(not precedential).

Plaintiffs' Complaint falls short of these requirements.   They charge multiple defendants with fraud but fail, with any specificity, to state when and where the alleged misleading statements were made or to attribute any specific misstatement to an individual defendant.  While there are general allegations of fraud and misrepresentation, Rule 9(b), especially when multiple defendants are involved, requires greater particularity.  Accordingly, Plaintiffs' claims of fraud will be dismissed without prejudice.

2. *Conspiracy*

Plaintiffs allege that Moving Defendants conspired to conceal the truth about the "experimental" nature of the surgeries, what happened during Kaitlyn's surgeries and the circumstances surrounding her death.  To state a cause of civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means.  Skipworth by Williams v. Lead Indus. Ass'n, Inc., 547 Pa. 224, 236 (1997).  In addition, "proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy."  Id.

6

In the instant case, Plaintiffs are alleging a conspiracy to commit fraud.  Because the Court is dismissing the underlying fraud claim for failure to comply with Rule 9(b), the conspiracy to commit fraud claim with also be dismissed without prejudice.  See Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) ("[I]n actions alleging conspiracy to defraud or conceal, the particularity requirement of Rule 9(b) must be met."); Segal v. Gordon, 467 F.2d 602, 607 (2d Cir. 1972) (same).

B. Count IV - Negligent Infliction of Emotional Distress

Plaintiffs allege that they "suffered severe emotional distress and, and serious injuries to their nerves and other parts of their bodies" when they learned that Kaitlyn underwent "experimental" surgery and care that was "without proper safeguards."[7]  To state a claim under Delaware law for emotional distress directly caused by another's negligence, the plaintiff must show that "the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance." Lupo v. Med. Ctr. of Delaware, Inc., 1996 WL 111132 (Del. Super. Feb. 7, 1996).  In addition, Plaintiffs must show that the distress was sufficient to cause physical injury.  Lloyd v. Jefferson, 53 F.Supp 2d 643, 675 (D.Del. 1999).

Taking all the allegations in the Complaint as true, it would be premature to conclude that Plaintiffs could prove no set of facts that would entitle them to relief.  If Plaintiffs were lied to about their daughter's death and the alleged surrounding circumstances, a jury could find that Plaintiffs suffered emotional distress with physical ramifications when they learned of the "true reasons" for the daughters death.  Accordingly, Moving Defendants' Motion to Dismiss Count

_____

[7]     In their response to the Motion to Dismiss, Plaintiffs state that they are not claiming negligent infliction of emotional distress based on Kaitlyn's death but rather on the injuries they received upon learning of the "true reason" for Kaitlyn's death.

IV of the Complaint will be denied.

    C. <u>Count VI - Informed Consent</u>

        In Count VI, Plaintiffs set forth a claim of medical malpractice based on lack of informed consent against Drs. Norwood, Pizarro, Murphy, Raphaely, Spurrier and Davis. Plaintiffs contend that they were not informed about the risks of the procedures or that they were "experimental" and that they therefore did not consent to the surgeries.  In their Motion to Dismiss, Drs. Pizarro, Murphy, Raphaely, Spurrier and Davis move to dismiss the informed consent claim arguing that they were not active participants in the surgeries and, therefore, not required to obtain Plaintiffs' consent.  Drs. Murphy and Pizzaro argue that they did not participate in the surgeries at all, and Drs. Raphaely, Spurrier and Davis, the anesthesiologists, argue that they only administered the anesthesia and that there are no allegations that Plaintiffs did not consent to the anesthesia.

        In Delaware, informed consent in the context of medical malpractice is defined by statute. 18 Del. C. § 6852(a)(2).  The patient must demonstrate that the health care provider failed to supply information "customarily given" by other "licensed health care providers with similar training and/or experience in the same or similar health care communities as that of the defendant at the time of the treatment, procedure or surgery."  <u>Id.</u>

        Delaware law defines informed consent:

    "Informed consent" means the consent of a patient to the performance of health care services by a health care provider given after the health care provider has informed the patient, to an extent reasonably comprehensible to general lay understanding, of the nature of the proposed procedure or treatment and of the risks and alternatives to treatment or diagnosis which a reasonable patient would consider material to the decision whether or not to undergo the treatment or diagnosis."

18 Del. C. § 6801(6).  The plain language of the statute requires a plaintiff to produce (1) evidence of the standard of care and, (2) evidence of whether the health care provider met that standard.

The Complaint is not clear as to what role, if any, Dr. Murphy played in providing Kaitlyn's care.  It is not alleged that he participated in either of the surgeries.  However, it is alleged that he was conducting the study, along with Dr. Norwood, to determine whether the third surgery, which Kaitlyn never received, could be performed in a "cath lab."  Plaintiffs also claim that he recruited patients for the study.  Taking these allegations as true, it would be premature to conclude that Plaintiffs could prove no set of facts establishing that Dr. Murphy failed to properly inform them when recruiting their daughter for the study of the "nature of the proposed procedure or treatment and of the risks and alternatives to treatment or diagnosis." Accordingly, Dr. Murphy's Motion to Dismiss the informed consent claim will be denied.

Although Moving Defendants argue otherwise, the Complaint does allege that Dr. Pizarro participated in the surgeries.  Complaint ¶ 7.  He is also alleged to have recruited patients for the study.  Accordingly, the Motion to Dismiss the informed consent claim against Dr. Pizarro will be denied.

Plaintiffs also bring informed consent claims against Drs. Raphaely, Spurrier and Davis, the anesthesiologists attending their daughter's surgical procedures.  However, Drs. Raphaely, Spurrier and Davis did not perform the surgical procedures; they administered anesthesia. Plaintiffs do not allege anywhere that those doctors failed to secure consent for the anesthesia administered.   Accordingly, the informed consent claims against Drs. Raphaely, Spurrier and Davis will be dismissed.

D. Count VII - Rehabilitation Act

Plaintiffs allege that the Cardiac Center at the Dupont Hospital was not subject to the same quality control procedures and level of administrative oversight found in the rest of Dupont Hospital. They argue that their daughter, because of her disabling heart defects, was treated in a facility that provided less quality than was found throughout the rest of Dupont Hospital. As a result, they bring claims against DuPont Hospital, The Nemours Foundation, Drs. Norwood, Davis, Murphy, Raphaely, Spurrier and Pizarro alleging violations of the Rehabilitation Act, 29 U.S.C. § 701 et seq.

To state a claim under the Rehabilitation Act, a plaintiff must allege that: (1) he is a "handicapped individual" under the Act; (2) he is "otherwise qualified" for the program sought; (3) he was excluded from the program "solely by reason of his handicap"; and (4) the program at issue receives federal financial assistance. Wagner by Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1009 (3d Cir. 1995).

Dismissal at this stage of the proceedings would be premature as the viability of the Rehabilitation Act claim will depend, at least in some part, on factual allegations that are not yet part of the record. Accordingly, the Motion to Dismiss the Rehabilitation Act claim will be denied.[8]

E. Punitive Damages

---

[8]     Although it would be premature to dismiss Count VII at this stage, the Court finds the Honorable Judge Berle Schiller's opinion on this issue in a case with almost identical facts to be persuasive. See Holly Farrell, et al. v. The A.I Dupont Hospital for Children of the Nemours Foundation, et al., No. 04-3877 (E.D. Pa. June 5, 2006) (order granting partial summary judgment). Even assuming that the Rehabilitation Act can be applied to medical decisions, Plaintiffs must present some evidence of exclusion, denial, or discrimination to survive a summary judgment motion on this count.

Moving Defendants move to dismiss the claim for punitive damages from the Complaint arguing that Plaintiffs "have failed to allege any intentional conduct that merits a finding of punitive damages or that could be considered reckless."

Pennsylvania has adopted the guidelines on punitive damages set forth in Section 908 of the Restatement (Second) of Torts which states that "punitive damages are damages, other than compensatory damages, awarded against a person to punish him for his outrageous conduct." Feld v. Merriam, 506 Pa. 383 (1984). Comment (b) to Section 908 states that: "punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others."

To award punitive damages, a jury must find that a defendant's conduct was "outrageous." Taking all of Plaintiffs' allegations as true, it would be premature at this stage of the proceedings to conclude that Plaintiffs could prove no set of facts entitling them to punitive damages. Accordingly, the Motion to Dismiss the claim for punitive damages will be denied.

F. Motion to Strike

Moving Defendants move to strike the allegations contained in paragraphs 59, 76, 91-92, 109-111, 122-23, 196-98 and 210-211 of the Complaint, arguing that the material contained therein is impertinent and scandalous.

Motions to strike are viewed with disfavor and rarely granted. In order to prevail on a motion to strike: (1) the allegations must be clearly unrelated to the pleader's claims; and (2), the moving party must show how it will be prejudiced if the challenged allegations remain in the pleading. See McInerney v. Moyer Lumber & Hardware, Inc., 244 F.Supp. 2d 393, 402 (E.D.Pa 2002). The allegations contained in these paragraphs are clearly material to the allegations in the

11

Complaint.  Additionally, Moving Defendants have not alleged how they would be prejudiced if the allegations contained therein remain.  Accordingly, the motion to strike will be denied.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Moving Defendants' Motion to Dismiss and deny the Motion to Strike.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD PAPACODA, <u>et al.</u>** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 05-CV-3003** |
| | : | |
| **THE A.I. DUPONT HOSPITAL FOR** | : | |
| **CHILDREN OF THE NEMOURS** | : | |
| **FOUNDATION, <u>et al.</u>** | : | |

**<u>ORDER</u>**

**AND NOW**, this  26TH  day of June, 2006, upon consideration of Moving Defendants Motion to Dismiss and Motion to Strike (docket no. 7), and the response thereto, it is **ORDERED** that:

1. Plaintiffs' claims of fraud and conspiracy are **DISMISSED without prejudice.**

2. The motion to dismiss Plaintiffs' claim of negligent infliction of emotional distress is **DENIED.**

3. The motion to dismiss Plaintiffs' claim under the Rehabilitation Act is **DENIED**.

4. Plaintiffs' claims of lack of informed consent against Drs. Davis, Raphaely, and Spurrier are **DISMISSED**.  The Motion to Dismiss the lack of informed consent claims against Drs. Murphy and Pizarro is **DENIED**.

5. The Motion to Dismiss Plaintiffs' claim for punitive damages is **DENIED**.

6. The Motion to Dismiss the Complaint for failure to comply with Rule 10(b) is **DENIED**.

7. The Motion to Strike is **DENIED**.

**BY THE COURT:**

 **/s/ Bruce W. Kauffman**
 **BRUCE W. KAUFFMAN,  J.**